IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

A HELPING HAND, L.L.C.,
and JOHN DOE                    :
                                :
                                :
       v.                       :        CIVIL ACTION NO.
                                :        CCB-05-844
                                :
BALTIMORE COUNTY, MD., et al.   :

**MEMORANDUM**

Several motions are now pending before the court. Defendants have filed a motion to dismiss, and, in turn, the plaintiff has filed a motion for protective order leave to proceed anonymously and file an amended complaint.[1] (*See* docket entry nos. 3 and 4.) The plaintiff has also moved to consolidate this action with a previously filed action (Civ. No. CCB-02-2568) brought by Helping Hand, L.L.C. against the defendants. (*See* docket entry no. 11.) The plaintiff ("John Doe"), a patient at a private methadone treatment clinic operating in Baltimore County ("Helping Hand") filed suit against Baltimore County defendants ("the County"), alleging that the defendants intentionally discriminated against the clinic and, in doing so, also discriminated against him, by passing a restrictive zoning law in violation of Title II and Title IV of the Americans with Disabilities Act. The plaintiff also asserts a § 1983 claim on the basis that

---

[1] The court refers to the plaintiff here in the singular. Although plaintiff's complaint references Helping Hand in improperly using the "use plaintiffs" device, repeatedly refers to "plaintiff(s)," and alludes to multiple possible "Does," the court, recognizing it might not have been plaintiff's intent, construes the complaint as being brought by the one John Doe specifically identified at the time of filing. Through its proposed "supplemental" complaint, plaintiff seeks to add, or--as may have been the case--better identify, another John Doe and three Jane Does. (See docket entry no. 9).

defendants' actions deprived the plaintiff of property in violation of the Due Process Clause of the Fourteenth Amendment. For the reasons discussed below, the plaintiff's motions to proceed anonymously and for leave to amend, as well as to consolidate the action, will be granted, and the County's motion to dismiss will be denied.[2]

## BACKGROUND

The location and operation of methadone maintenance treatment clinics within Baltimore County has been an ongoing source of controversy. In 1999, this court ruled that the County's special zoning permit requirements for methadone treatment facilities ran afoul of the Americans with Disabilities Act of 1990. *Smith-Berch, Inc. v. Baltimore County,* 68 F.Supp. 2d 602, 622-23 (D.Md. 1999); 115 F. Supp.2d 520, 524 (D.Md. 2000). The court held that "while the ADA certainly does not prohibit the County from adopting appropriate zoning regulations governing the location of methadone treatment facilities, the court believes that the ADA prohibits the County from enforcing its zoning regulations in a manner that effectively precludes proposed methadone treatment programs from operating in the county or that otherwise imposes unreasonable burdens on such programs." *Smith-Berch*, 68 F.Supp.2d at 622. Despite this guidance indicating that the County could design and enforce legitimate zoning regulations

---

[2] As more fully explained below, the defendants' motion to dismiss the original John Doe, identified in the original complaint as R.A., will be denied. In doing so, the court deems him a proper plaintiff with respect to the statute of limitations and other issues raised in the motion to dismiss. As to the other "Does," the court's ruling today only grants plaintiff's request to file an amended complaint containing these additional parties and, to the extent defendants' motion seeks to dismiss these additional "Does," denies the motion to dismiss without prejudice as to those parties. Whether these additional "Does" are proper plaintiffs may be better resolved with the benefit of a fuller factual record and, thus, their status as such is not addressed here today.

regarding the siting of methadone treatment clinics, the County Council did not address the issue at that time.

On April 15, 2002, Bill 39-02, which amended the zoning regulations for "certain State-licensed medical clinics," was passed by the County Council and was signed into law the next morning by the County Executive. Subsequently, in August of 2002, Helping Hand brought suit against the county. I will presume familiarity with my previous rulings in that matter, as they discuss many of the relevant factual and procedural details behind the passage of Bill 39-02, its relation to Helping Hand, and the suit that followed. *See A Helping Hand, L.L.C. v. Baltimore County, MD, et al.,* 295 F.Supp. 2d 585 (D.Md. 2003); 299 F.Supp.2d 501 (D.Md. 2004); 2004 WL 392873 (D.Md. 2004); 2004 WL 86288 (D.Md. 2004); 2005 WL 2453062 (D.Md. 2005). The related opinions in *Smith-Berch, Inc., see* 68 F.Supp. 2d 602, 115 F. Supp.2d 520, 216 F.Supp.2d 537 (D.Md. 2002), 64 Fed.Appx. 887 (4th Cir. 2003), provide additional historical background that is helpful to understanding the present dispute. On March 29, 2005, an individual client of the Helping Hand clinic brought this suit against the County under the name "John Doe," making allegations essentially identical to those in CCB-02-2568. These motions followed.[3]

---

[3] As the parties have, through their filings, somewhat complicated the procedural posture of this case, some background on those filings may be helpful in understanding the issues raised therein. As discussed above, Helping Hand brought suit in 2002 on behalf of the clinic itself. The present suit was brought in March of 2005, not by the clinic, but by one of its patients. Counsel for the plaintiff, however, erroneously styled the complaint in this action as "John Doe(s) as a use plaintiff(s) by a Helping Hand, L.L.C." Further, in the complaint, plaintiff repeatedly refers to "plaintiff(s)," and alludes to multiple possible "Does." The complaint, however, was not intended to be filed on behalf of the clinic, as such a suit is already before this court, and only specifically identifies one John Doe, whose initials are "R.A." After the filing of the initial complaint, defendants filed a motion to dismiss "Plaintiffs John Doe" in May 2005, and a response and reply thereto were eventually filed. (*See* docket entry nos. 3, 5, and 6.) Later

## ANALYSIS

The county, in its typical prolix fashion, makes multiple arguments for dismissal and against allowing plaintiffs to amend and proceed anonymously and against consolidation. The parties focus on whether the statute of limitations has run so as to bar the claims of the new plaintiffs that would be added under the amended or "supplemental" complaint and whether their claims can "relate back" to the original March 29, 2005 filing date.[4] The court will first take up the motion to dismiss and the question of these new plaintiffs. As further explained below,

---

in May 2005, plaintiff filed a motion for protective order leave to proceed anonymously and to file an amended complaint, but did not file the proposed amended or "supplemental" complaint at that time. (Docket entry no. 4.) While the complaint only clearly contained one John Doe at that time, the motion to proceed anonymously requested such permission for all of the proposed "Does." In June 2005, defendants responded in opposition to plaintiff's request to proceed anonymously and to amend, and plaintiff replied, this time including the proposed amended or "supplemental" complaint. (*See* docket entry nos. 7, 8, and 9.) Finally, in October 2005, plaintiff filed its motion to consolidate this case with CCB-02-2568, and the defendants' response and the reply thereto followed. (See docket entry nos. 11, 12, and 13.) This opinion addresses all of the above.

[4] Among the many other arguments put forth by the county is that this court never had jurisdiction over these plaintiffs and that no supplemental or amended pleading could ever correct for such a flaw. For this proposition, the county relies on *W.N.J. v. Yocom*, 257 F.3d 1171 (10th Cir. 2001) and *Estate of Rodriguez v. Drummond Co.*, 256 F.Supp.2d 1250 (N.D.Ala. 2003). In *Yocom*, the plaintiffs initially failed to seek the court's permission to proceed anonymously. The plaintiffs attempted to correct this deficiency by obtaining an order granting permission to proceed anonymously dated *nunc pro tunc* to the filing of the action. The Tenth Circuit explained that the plaintiffs' problem could not be remedied in such a manner because the appellate court already had taken jurisdiction of the case. The ruling turned on the fact that a lower court loses jurisdiction once an appellate court takes the case; the Circuit did not rule that such deficiencies can never be corrected in the manner that Rule 17 of the Federal Rules of Civil Procedure clearly contemplates. *See Doe v. Barrow County*, 219 F.R.D. 189, 191, 92 (N.D.Ga. 2003)(persuasively explaining why the court in *Rodriquez*, 256 F.Supp.2d. 1250, improperly relied on *Yocom* when it credited the argument of a defendant incorrectly using *Yocom* as the county attempts to do here). Here, plaintiffs' request for permission to proceed anonymously is presented while this court still has jurisdiction. *Doe*, 219 F.R.D. at 192; *see also EW v. New York Blood Center*, 213 F.R.D. 108, 109-10 (E.D.N.Y. 2003).

however, the court will only rule on whether the original John Doe should be dismissed and on his request for leave to amend, leaving for another day the question of those additional "Does'" proper presence in this suit. After addressing plaintiff's request for leave to amend, the issues of anonymity and consolidation will be considered.

A. *Motion to Dismiss and Leave to Amend*

While the parties spend much time arguing over the timeliness of the claims brought by the additional "Does" contained in the "supplemental" complaint[5], the court believes that whether these additional "Does" are proper plaintiffs would be better resolved with the benefit of a fuller factual record. As to these "Does," therefore, only the question of plaintiff's ability to amend his complaint should be addressed at this time. There is the preliminary matter, however, of the defendants' motion to dismiss the original John Doe. If his claims are dismissed, he may not proceed, much less amend to bring in additional plaintiffs.

The applicable statute of limitations here is three years.[6] The ordinance being challenged was signed into law on April 16, 2002 and the county argues that, as a result, April 16, 2005 is the latest possible date on which the statute of limitations would run. This action was filed on

---

[5] While plaintiff has filed a "supplemental complaint, " it may technically be more properly an attempt to file an "amended" pleading because it contains no new matters which occurred after the original complaint was filed. *Compare* Fed.R.Civ.P. 15(a) and 15(d).

[6] In choosing the applicable statute of limitations, the court must first select the state statute most analogous to the federal claim and then consider whether application of that limitations period is consistent with the federal statute and its underlying policies. *See McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 129 (4th Cir. 1994)(citing *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). Maryland federal courts have held that the proper period in Maryland for civil rights actions such as this is three years. *See Grattan v. Burnett*, 710 F.2d 160, 162 (4th Cir. 1983)(§1983 claims); *Schalk v. Associated Anesthesiology Practice*, 316 F.Supp.2d. 244, 251 (D.Md. 2004)(Rehabilitation Act claims); *Kohler v. Shenasky*, 914 F.Supp. 1206, 1212 (D.Md.1995)(ADA claims).

March 29, 2005, and the parties agree that the filing was within the limitations period, whatever it may be.[7] The original John Doe, identified by the initials R.A., was clearly a plaintiff in this suit at the time of its March 29, 2005 filing. The county concedes as much, challenging only the timeliness of the additional "Does" contained in the amended complaint which was not filed until June 24, 2005. The motion to dismiss the John Doe identified as R.A., therefore, is denied. His request for leave to amend remains.

Leave to amend must be freely granted, and amendments are generally accepted absent futility or undue prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)("In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive...undue prejudice...[or] futility of amendment, the leave sought should, as the rules require, be 'freely given.'.").[8] Among the

---

[7] As March 29, 2005 is within even the most restrictive possible view of the statute of limitations period put forth by the defendants, the court makes no finding as to whether the "discovery rule" may extend the applicable limitations period as to John Doe or any other plaintiffs.

[8] Leave to amend is governed by Fed. R. Civ. Pro. ("FRCP") 15. Both parties seem to assume that FRCP 17 also applies, arguing that the plaintiff is seeking to join or substitute new "real parties in interest." *See* Fed. R. Civ. Pro.17(a)("No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest..."). The court does not construe the plaintiff's proposed amendment as an attempt to join or substitute real parties in interest. Rather, as further discussed below, plaintiff's motion is an appropriate attempt to add parties by amendment to the complaint. Discussing FRCP 17's role as a "shield for defendants," *see Intown Prop. Management, Inc., v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 169 (4th Cir. 2001), the county expresses concern that allowing such an amendment which lists "new" plaintiffs opens the door for endless new liability as plaintiffs are continually added. These concerns are unfounded. The ruling today in no way implies that endless new plaintiffs will be allowed to join pursuant to FRCP 15 or any other rule. Nor does the court even hold that the "Does" contained in the proposed amended complaint are ultimately proper

types of amendments permitted under FRCP 15(a) are those correcting a misnomer of a party to the action and amendments to add or drop parties to the action. *See* 6 Charles Alan Wright, Arthur Miller & Mary Kay Kane, *Federal Practice & Procedure* §1474 (2d ed. 1990); *see also Vera v. Bush,* 980 F.Supp. 254, 255 (S.D.Tex. 1997); *and Joshlin v. Gannett River States Pub. Corp.*, 152 F.R.D. 577, 579 (E.D. Ark. 1993).[9]

The county contends that amending would be futile because the additional "Does'" claims are time barred. The timeliness of these "Does'" claims, however, is unclear and would be better resolved with the benefit of a more fully developed record.[10] As futility is not clear from the face of the proposed amended complaint, allowing the plaintiff to amend, allowing a party to amend, and reserving for later consideration of the defendants' objections by way of an appropriate motion is warranted. *Cf. See Gray v. T. Metts, Ed.D.*, 203 F.Supp.2d 426, 428-29 (D.Md 2002)(citing *Brooks v. Winston-Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir. 1996), noting that statute of limitations defenses are usually not appropriate grounds for dismissal, and requiring the running thereof to be apparent on the face of the complaint and undisputed).

---

plaintiffs to this suit. Moreover, any future motions for leave to amend or to intervene may very well present different factual issues with respect to undue prejudice on the county.

[9] It is unclear whether plaintiff's proposed amended complaint should be construed as simply correcting an error or actually adding parties. On the one hand, plaintiff's styling of the initial complaint suggests he intended it to be on behalf of multiple "Does." Plaintiff erroneously styled the complaint in this action as "John Doe(s) as a use plaintiff(s) by a Helping Hand, L.L.C.," repeatedly refers to "plaintiff(s)," and alludes to multiple "Does." He made specific reference, however, to only one John Doe.

[10] As the parties have already argued, the new plaintiffs' claims could conceivably be timely under either of two theories. First, plaintiffs contend they are timely because each new plaintiff's "date of discovery" of the alleged violations came later than June 28, 2002. Second, they contend that the claims could be deemed timely if they "relate back" to the initial March 29, 2005 filing under either FRCP 15 or 17. The court expresses no views on these arguments.

7

The county also protests that granting leave to amend would subject it to undue prejudice and accuses plaintiff of bad faith or dilatory motive. Provided adequate opportunity for discovery, as the court will grant, the county cannot claim any undue prejudice. The June 24, 2005 supplemental complaint is practically identical to the original March 29, 2005 complaint. Defendants were on notice of all the claims of the plaintiffs and of their own potential liability. *See, e.g., Advanced Magnetics, Inc. v. Bayfront Partners Inc.*, 106 F.3d 11, 19-20 (2nd Cir. 1997). Moreover, the court finds the county's overly accusatory charges of plaintiff's gamesmanship unfounded. Far from a deliberate and bad faith pursuit of a tactical advantage, the plaintiff's initial filing appears to be an honest, as well as harmless, mistake. The county demands, without support, that plaintiffs must produce proof to disavow the nefarious behavior of which they are accused by the county. There may have been some delay here, three months to be exact, but "delay alone...without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial." *See Piper Aircraft*, 615 F.2d at 613 (finding a four month delay, by itself, insufficient to deny plaintiff's amendment and request that same "relate back."). Not finding "obvious design by dilatoriness to harass the opponent," nor any prejudice, the court makes no such evidentiary demand on the plaintiffs.[11] The plaintiff's request for leave to amend will be granted.*[12]*

---

[11] It should be noted that the invocation of the "use plaintiff" device, and to a much lesser extent, the failure to initially request permission to proceed anonymously, were indeed regrettable mistakes. The "use plaintiff" device has been long since discarded, but there is no apparent tactical advantage of incorrectly invoking a clearly foreclosed device, and such a mistake in no way suggests bad faith. To the contrary, plaintiff's counsel apparently believed that the device was a way in which to present the claims of multiple John Does, and its mistaken use has created more work for the plaintiff and potentially put his case at risk. Further, far from attempting to bring claims of "fictitious parties" as the county charges, patients of the clinic do exist, as the county has been quite aware over the course of the Helping Hands litigation. Indeed,

*B. Permission to Proceed Anonymously*

In special circumstances, a party can obtain permission from the court to proceed anonymously under a pseudonym; such a decision rests within the discretion of the court. *See James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). In ruling on such a request, the court should consider whether "the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992)(quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). The Fourth Circuit has identified various factors which should be considered. Among them are:

> "whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Jacobson*, 6 F.3d at 238.

Whether measures are available to the court which could effectively avoid any real prejudice to the defendant is also relevant. *Id.* at 242 (noting that "evidentiary rulings and jury

---

the county has sought access to their records, not because the county did not believe that patients existed, but because the county hoped the records would support its various arguments that the patients were not "disabled" or were otherwise not covered under the anti-discrimination statutes.

[12] As the plaintiff's request for leave to amend will be granted, the court will consider the request for permission to proceed anonymously as one pertaining to all of the John and Jane Does. It should again be made clear, however, that the defendants' motion to dismiss as to the "new" John and Jane Does contained in the amended complaint is denied *without* prejudice, leaving their presence in the case open to objection after additional discovery is conducted.

9

instructions, coupled with general instructions explaining that pseudonymity was allowed only to protect [individuals] without regard to the merits of the claim, effectively could avoid any prejudice."). Whether denial of permission to proceed anonymously would likely result in cutting off the claim because plaintiffs, reasonably, would be unwilling to proceed, is also of significant relevance. *See id.* Additionally, whether the action would require disclosure of the plaintiffs' involvement in illegal conduct is a factor that may militate in favor of anonymity.[13] *See New York Blood Center*, 213 F.R.D. at 111; *and see S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 713 (5th Cir. 1979)(noting that cases which have allowed anonymity have involved plaintiffs who "had to admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct.").[14] Finally, whether the full plaintiffs' identities will be revealed to the defendants, being shielded only from the general public, should weigh heavily in the determination. *See Jacobson*, 6 F.3d at 235-36; *cf. Pathways Psychological Support Center v. Leonardtown*, 1999 WL 1068488, *4 (D.Md.

---

[13] The county contests whether the prospect of having to admit past criminal conduct is even a factor, arguing that *Doe v. City of New York*, 201 F.R.D. 100, 102 (S.D.N.Y. 2001), only speaks of future intention to commit crimes. Not only does *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 713 (5th Cir. 1979), speak directly of admission of past conduct, *Doe v. City of New York* itself, while speaking of risk of future prosecution, seems at least plausibly to be talking about future prosecutions of past conduct. 201 F.R.D. at 102 (discussing the unlikelihood of "risking criminal prosecution, particularly as the state charges against her have been dismissed.").

[14] Especially with respect to this factor, the county objects that the list of factors in *Jacobson* is exhaustive. This is not correct. *See Jacobson*, 6 F.3d at 238 (using the words "among them are the following" in speaking of the various factors that can be gleaned from the cases.); *Doe v. Merten*, 219 F.R.D. 387, 392, 396 n. 26 (E.D.Va. 2004)("Although this factor is not listed in *Jacobson*, that opinion makes clear that the five identified factors were not exhaustive."); *EW v. New York Blood Center*, 213 F.R.D.at 111 ("such factors include"); *and Doe v. City of New York*, 201 F.R.D. at 102 ("And while other factors also may be relevant, these certainly are an appropriate starting point for analysis.").

1999)('Pathways cannot proceed on behalf of Plaintiffs John Does because it has failed to identify them to Defendants...").

With full recognition that permission to proceed anonymously is appropriate only under exceptional circumstances, the court finds present in this case several factors strongly weighing in favor of such a "rare dispensation." *See Jacobson*, 6 F.3d at 238. First, plaintiffs bring this suit against a governmental entity, and thus, concerns over injury to the defendant's reputation are generally minimal. *See Merten*, 219 F.R.D. at 394 (citing *Wynne & Jaffe,* 599 F.2d at 713.). In fact, where a plaintiff attacks a governmental activity such as a allegedly discriminatory statute, courts have recognized that the interest in proceeding anonymously is particularly strong. *See New York Blood Center*, 213 F.R.D.at 111.[15]

The county correctly points out that its status as a governmental entity is not dispositive, *see Merten*, 219 F.R.D. at 394, and that some courts have reasoned that such status may even, in some circumstances, cut the other way. *See Doe v. City of New York*, 201 F.R.D. at 102 ("involvement of the government indicates that there is a public interest in the facts of the incident at issue as opposed merely to a public interest in knowledge of the manner in which the courts function..."). To the extent there is a public interest in the facts of the "incident at issue" here, however, such facts have already been, and will continue to be, well publicized, and

---

[15] The *New York Blood Center* court stated: "Turning to the first factor, where a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong. *See, e.g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147. In such circumstances the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights. In addition, the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant."

11

permitting the use of pseudonyms will not deprive the public of any pertinent information about the litigation. *See Doe v. Stegall*, 653 F.2d at 185 ("Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them."). All the public would be deprived of is the actual identity of the plaintiffs, a safeguard the court finds warranted, as further discussed below.

Second, the court fails to see why allowing the plaintiffs to proceed anonymously, while revealing their identities to the defendants, would in any way prejudice the county. As long as the county is allowed to know the identity of the plaintiffs and measures are taken to permit the limited disclosure necessary for adequate discovery, the defendants can complain of no significant hardship.[16] The John and Jane Doe affidavits presented under seal include supplemental affidavits revealing the plaintiffs' true identities.[17] These have been made available to the county. Even in the context of a trial, plaintiff witnesses proceeding under a pseudonym need not hinder the defendant's ability to impeach their credibility or otherwise put on their defense. *See Jacobson*, 6 F.3d at 242 ("Demeanor is demeanor, however the witness is identified, and it would seem to make no difference to a jury in assessing...credibility whether the witness bore the name John Smith or Henry Williams."). Further, the court is prepared to permit discovery and employ confidentiality agreements as necessary to facilitate the county's

---

[16] The county complains that the very allowance of pseudonyms reinforces the perception that the plaintiffs have been discriminated against and have something to fear in terms of reprisals from the government. Without agreeing this is correct, the court notes there are steps it could take to minimize such a possibility. *See Jacobson*, 6 F.3d at 242 (noting that "evidentiary rulings with jury instructions, coupled with general instructions explaining that pseudonymity was allowed only to protect [individuals] without regard to the merits of the claim, effectively could avoid any prejudice.").

[17] The plaintiffs' motion to seal these affidavits (docket entry no. 10) will be granted.

relevant and reasonable inquiries to third-parties regarding the plaintiffs. *See id*. at 235-36 (detailing the extensive protective measures available to a court to preserve anonymity and still afford defendants ample discovery).[18] The fact that such measures are available only increases the appropriateness of allowing anonymity. *See id*. at 242 (holding that whether measures are available to the court which could effectively avoid any real prejudice to the defendant is also relevant).

Third, contrary to the county's dismissive attitude toward the plaintiffs' concerns, concerns made particularly reasonable by the county's own alleged behavior, there are substantial privacy issues implicated which favor anonymity. The personal information which plaintiffs will have to admit over the course of this litigation is extremely sensitive and of a highly personal nature. *See Jacobson*, 6 F.3d at 238. Plaintiffs have submitted affidavits attesting to their fear of being subjected to hardships, public humiliation, and ridicule. (*See e.g.* Affidavit of Jane Doe No. One at ¶33.) Public revelation of heroin addiction is, rightly or wrongly, highly stigmatizing in our society, reaching far beyond the mere possible risk to future job prospects, as in *Wynne & Jaffe,* 599 F.2d at 713, or speculative claims of economic injury, as in *Guerilla Girl Inc. v. Kaz,* 224 F.R.D. 571, 573 (S.D.N.Y. 2004). While the county attempts to make a distinction, the court finds it difficult to believe that being identified as a drug addict - and a heroin addict specifically - is any less likely to be stigmatizing than, for example, having a

---

[18] The county contends that, due to the nature of the discovery it wants to conduct, complying with confidentiality orders would be difficult and impractical. The court will work with the parties to construct a discovery regime that meets the needs of anonymity and the county's need for adequate discovery and preparation of its defense.

sexually transmitted disease, as in *New York Blood Center*, 213 F.R.D. at 112.[19] The reaction of the community and the county in this very controversy lends support to this contention.[20]

This case has already received publicity, and the prospects of plaintiffs' identities becoming known to employers, colleagues, and friends are high, absent the protection that pseudonyms could provide. Identification certainly poses a risk of retaliation, embarrassment, and emotional harm to the plaintiffs or, even more critically, to innocent non-parties such as the plaintiffs' family members. *See Jacobson*, 6 F.3d at 238. Three of the plaintiffs have averred that they fear discrimination and adverse employment consequences should their addiction be revealed. (See Affidavits of John and Jane Does.)

Further, among the type of information which plaintiffs may have to admit is both past illegal conduct and a predisposition toward future illegal conduct, placing them at risk of prosecution. (*See* Affidavit of Jane Doe Three at ¶3.) It is also important to note that many of the cases which stressed a lack of any *increased* risk of prosecution, including cases cited by the

---

[19] The county mounts its attack on plaintiffs' request by reference to a host of cases which it contends demonstrate that the highly sensitive information with which the plaintiffs are concerned is simply not intimate or embarrassing enough and does not sufficiently implicate the same privacy rights as courts have found deserving of protection. While it is true that many of the cases permitting anonymity involved sexual behavior or abortion, *see New York Blood Center*, 213 F.R.D.at 111 (citing multiple examples), those rulings were motivated, at least in part, by concerns that revealing the plaintiff's identity would "subject him or her to the risk of public disapproval, harassment, or bodily harm." *Id*. As discussed above, here, such risks are real even if they do not implicate sexual behavior or abortion. Moreover, that the county has identified a list of courts that have denied permission to proceed anonymously in other cases is of limited consequence to this case and these facts. The district court in *Jacobson* was reversed, even under the deferential "abuse of discretion" standard, for not conducting a particularized assessment of the facts and equities involved in the case before it. *See* 6 F.3d at 239.

[20] One plaintiff has even reported that the parking lot of the clinic was purposely littered with nails during the first six months of operation. (Affidavit of Jane Doe No. One at ¶5.)

county, did so at least in part because the identities of the plaintiffs were already known to the law enforcement or immigration authorities. *See, e.g., Merten*, 219 F.R.D. at 393; *see also M.M. v. Zavaras*, 139 F.3d 798 (10th Cir.1998)(in civil rights action by prison inmate, plaintiff could not proceed under pseudonym, where claim of fear of retaliation by defendants lacked weight because plaintiff's identity was already known to defendants); *and Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996).

On a final note, there is a very real risk that, should this court deny this request to proceed anonymously, plaintiffs will not pursue this claim. *See Jacobson*, 6 F.3d at 242; *see also Merten*, 219 F.R.D. at 395. In view of the fears expressed in their affidavits and the community reaction they have already witnessed, it is entirely reasonable to expect unwillingness to proceed should their request of anonymity be denied. As the *Jacobson* court stressed, the result of denial could be to "effectively cut off a claim that, if proven, is obviously one of great civil wrong...[and] this obviously should not be lightly done." *Jacobson*, 6 F.3d at 242. In light of all of the foregoing, the plaintiffs' request for permission to proceed anonymously will be granted.

*C. Consolidation*

District courts have broad discretion under FRCP 42(a) to consolidate cases pending in the same court or district. *See A/S Ludwig Mowinckles Rederi v. Tidewater Const. Corp.*, 559 F.2d 928, 933 (4th Cir. 1977).[21]

---

[21] The county challenges both the sufficiency of the plaintiff's motion for consolidation and the court's being the "catalyst" for the plaintiff's motion to consolidate. The court's inherent broad discretion in this area, however, includes the authority to order consolidation *sua sponte*. *See Plimpton v. Cooper*, 141 F.Supp.2d 573, 575 (W.D.N.C. 2001)(citing *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444 (4th Cir. 1999); *see also Mylan Pharmaceuticals Inc. v. Henney*, 94

Consolidation is appropriate when actions involving common questions of law or fact are pending before the court and when doing so would foster clarity, efficiency, and the avoidance of confusion or prejudice. *See Landis v. Amer. Water Works & Elect. Co.*, 299 U.S. 248, 254 (1936); *see also Allfirst Bank v. Progress Rail Services Corp.*, 178 F.Supp.2d 513, 520 (D.Md. 2001); *and Coyne and Delany Co. v. Selman*, 98 F.3d 1457, 1473 (4th Cir. 1996)("because there is substantial overlap between [the cases], we believe the interests of judicial economy require that the cases be consolidated."). Where the claims in the two cases proposed for consolidation are the same claims, brought against the same defendant, relying on the same witnesses, alleging the same misconduct, and all answered with the same defenses,[22] the standard is clearly met. *See Harris v. L&L Wings, Inc.*, 132 F.3d 978, 982 n.2 (4th Cir. 1997). Further, "the fact that the actions are at different stages of trial preparation does not preclude consolidation automatically." *See Miller Brewing Co. v. Meal Co., LTD.*, 177 F.R.D. 642, 644 (E.D.Wisc. 1998)(quoting Fed. Prac. & Proc. Civ.2d §2383, and noting that, as the cases involve the same facts and issues, the already-started discovery in one case could apply in the later case as well). Logically, different stages of preparation are even less of a bar to consolidation when the more procedurally advanced case is not scheduled for trial for some time. *See e.g. Jean Doe v. DeBuono*, 193

---

F.Supp.2d 36, 43 (D.D.C. 2000)(stating that FRCP 42(a) permits *sua sponte* consolidation and listing multiple cases in which the courts have done so).

[22] To be sure, the county contends that it has defenses as to the John and Jane Does (statute of limitations) which it would lose through consolidation with Helping Hands' original action and, in turn, defenses against Helping Hand (standing) which it would similarly lose through consolidation. The court has already independently rejected or reserved consideration of those defenses. Contrary to the county's protest, the court's consideration of those defenses had nothing to do with the possible consolidation of these cases. *See* Section A *supra*; *and A Helping Hand, L.L.C. v. Baltimore County, MD, et al.*, 2005 WL 2453062, *8 (D.Md. 2005).

16

F.R.D. 117, 142 (S.D.N.Y. 2000)(finding all of the relevant factors to favor consolidation and stressing that, in any event, the trial calendar was full for seven months, leaving ample time for discovery without delay).

The court finds consolidation appropriate in this case. First, like *Debuono*, this court's trial calendar is full for several months, with Helping Hand's 2002 suit being scheduled for a May 2005 trial. This will permit ample time for whatever additional discovery consolidation necessitates. Further, the claims are nearly identical; the controversy arises out of the exact same set of facts; and the evidence, legal issues, and likely witnesses are the same. The county has been aware for some time that Helping Hands' claims are based, at least in part, on the effects the county's actions have had on the clinic's individual patients.

The standing defense which the county contends would be prejudiced by consolidation has already been rejected by this court. *See A Helping Hand, L.L.C. v. Baltimore County, MD, et al.,* 2005 WL 2453062, *8 (D.Md. 2005). The county also complains that its liability will increase as a result of consolidation, but the county already has its potential exposure in both the initial Helping Hand suit and the John Doe suit.[23]

## **CONCLUSION**

In light of all of the foregoing, the defendant's motion to dismiss will be denied. The plaintiffs' motions for leave to amend, for permission to proceed anonymously to seal, and to consolidate will be granted.

---

[23] On this point, the county seems to confuse the effects of consolidation here with the possible effect on liability that an untimely intervention of a new party - one who is not yet a party in any case against the defendant - might have. Here, the John and Jane Does are already plaintiffs with whom the defendants must contend, albeit initially in a separate if not identical proceeding.

A separate order follows.

  December 13, 2005                                          /s/
Date                                                     Catherine C. Blake
                                                           United States District Judge